FILED
United States Court of Appeals
Tenth Circuit

December 11, 2012

Elisabeth A. Shumaker
Clerk of Court

## UNITED STATES COURT OF APPEALS

## TENM CIRCUIT

TENTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff - Appellee, | |
| v. | No. 12-2025 |
| | (D.C. No. 09-CR-02982-JEC-1) |
| JAMES OLIVER REESE, | (D. N.M.) |
| Defendant - Appellant. | |

## CERTIFICATION OF QUESTION OF STATE LAW[*]

Before **BRISCOE**, Chief Judge, **KELLY** and **GORSUCH**, Circuit Judges.

To decide this appeal we need to know whether a New Mexico statute offends and so gives way to the New Mexico Constitution. If it does, James Reese prevails. If it does not, he loses. At the heart of this federal appeal, then, lies not just a question of state law but a question about the meaning and effect of a state's governing charter. It is, too, a close question with persuasive arguments on both sides. In these circumstances, our respect for our cooperative federal system leads us to conclude that the New Mexico Supreme Court, not this court,

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

should have the opportunity to decide it.  So it is we respectfully certify the matter.

When it comes to certification, we don't seek to "trouble our sister state courts every time an arguably unsettled question of state law comes across our desks.  When we see a reasonably clear and principled course, we will seek to follow it ourselves." *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007). But when important and close questions of state legal policy arise, we recognize that certification may "in the long run save time, energy, and resources and help[] build a cooperative judicial federalism." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974).  Certification in these circumstances "give[s] meaning and respect to the federal character of our judicial system, recognizing that the judicial policy of a state should be decided when possible by state . . . courts." *Pino*, 507 F.3d at 1236; *see also* 10th Cir. Rule 27.1.

Equally important, of course, is that the receiving state court find our question worthy of its attention.  So beyond attending to our own rules and standards, we consult state rules and standards before certifying any question. Looking to New Mexico law, it provides that the state's supreme court may answer a question from our court "if the answer may be determinative of an issue in pending litigation . . . and the question is one for which [the] answer is not provided by a controlling:  (a) appellate opinion of the New Mexico Supreme Court or the New Mexico Court of Appeals; or (b) constitutional provision or statute of [New Mexico]."  N.M. R. App. P. 12-607(A)(1).

- 2 -

Bearing in mind our criteria and New Mexico's similar standards, we believe the following question merits certification:

> If an otherwise-qualified person has completed a deferred sentence for a felony offense, is that person barred from holding public office without a pardon or certificate from the governor, as required by N.M. Stat. Ann. § 31-13-1(E), or is that person's right to hold office automatically restored by Article VII, §§ 1, 2 of the New Mexico Constitution and N.M. Stat. Ann. § 31-13-1(A)(1)?

The question comes to our doorstep in this way. Back in 1991, Mr. Reese found himself indicted by a New Mexico grand jury on charges of aggravated assault and tampering with evidence. A few months later, in 1992, he pleaded "no contest" to the tampering charge and, in return, the state agreed to drop the assault charges. When the state court entered a conviction pursuant to the parties' plea agreement, it deferred imposition of Mr. Reese's sentence for eighteen months, placing him on probation in the meantime. *See* N.M. Stat. Ann. § 31-20-3(A), 31-20-5(A). When Mr. Reese completed this period of deferred adjudication without incident, the court dismissed the criminal charge as provided by N.M. Stat. Ann. § 31-20-9.

Years later, Mr. Reese joined the Navy. It seems from the record we have he served honorably. During his time in the Navy, he was deployed to the Persian Gulf for Operation Iraqi Freedom, was responsible for loading missiles on Navy ships, and served as a small arms instructor, among many other things.

After leaving the armed forces, Mr. Reese returned to New Mexico and this is when his current troubles began. In 2009, federal agents raided Mr. Reese's home and office and seized over thirty firearms. After years of pre-trial wrangling, *see United States v. Reese*, 627 F.3d 792 (10th Cir. 2010), the government eventually settled on a set of twenty-four different charges against Mr. Reese. Faced with so many charges against him, Mr. Reese agreed to plead guilty to a single count of violating the federal statute prohibiting felons from possessing firearms. *See* 18 U.S.C. § 922(g)(1). The predicate felony conviction on which this charge rested was Mr. Reese's 1992 state deferred adjudication. In return, the government agreed to drop all of its remaining charges and allow Mr. Reese to reserve the right to appeal the district court's rejection of his motion to dismiss the sole remaining § 922(g)(1) charge.

That's the appeal now before us. Though it surely arises under a federal statute, we cannot decide it on federal grounds alone. To be sure, federal law strips the right to possess firearms from persons "convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). But state law determines whether a state court judgment constitutes a qualifying "conviction" under this rule. 18 U.S.C. § 921(a)(20). And even if a defendant's state conviction *does* qualify as a conviction divesting the defendant of the right to possess firearms, the right to possess firearms is restored under federal law if after conviction the defendant "has had civil rights restored." *Id.*

To have his "civil rights restored" and so enjoy the right to possess firearms again, this court has held the defendant-felon must be able to exercise four central rights: the right to vote, the right to serve on a jury, the right to possess firearms under state law, and the right to hold public office. *United States v. Maines*, 20 F.3d 1102, 1104 (10th Cir. 1994). And here, too, it is most often state, not federal, law that does the business of restoring these four critical rights to convicted felons.

In this case, everything boils down to whether New Mexico state law restored Mr. Reese's right to hold public office. There is no question that Mr. Reese's 1992 conviction was a crime punishable by more than a year in prison and so divested him of the right to possess firearms as a matter of federal law. Yet, the parties agree state law has since restored to Mr. Reese the right to vote, serve on a jury, and possess firearms under state law. *See* N.M. Stat. Ann. § 38-5-1(B) (restoring the right to serve on a jury); *id.* § 31-13-1(A)(1) (restoring the right to vote); *id.* § 30-7-16(C)(2)(C) (restoring the right to possess a firearm). Only Mr. Reese's right to hold public office remains in doubt, and on that question turns his right to possess firearms under federal law.

In the government's view, a state statute expressly bars Mr. Reese from holding office. The statute the government cites provides that "[a] person who has been convicted of a felony shall not be permitted to hold an office of public trust . . . unless the person has presented the governor with a certificate verifying

- 5 -

the completion of the sentence and was granted a pardon or a certificate by the governor restoring the person's full rights of citizenship." N.M. Stat. Ann. § 31-13-1(E). No one suggests Mr. Reese has received a pardon or certificate from the governor so, the reasoning goes, he is not eligible to hold office. From this, the government concludes, it follows Mr. Reese's civil rights haven't been fully restored by state law and he is not eligible to possess firearms under federal law.

On Mr. Reese's side of the ledger, one might argue that the New Mexico Constitution trumps section 31-13-1(E)'s statutory restriction. The state constitution provides that "[e]very citizen . . . who is a legal resident of the state and is a qualified elector therein, shall be qualified to hold any elective public office." N.M. Const. art. VII, § 2. In turn, a qualified elector (a legal voter) is defined as any citizen over twenty-one who meets certain residency requirements, "except idiots, insane persons and persons convicted of a felonious or infamous crime unless restored to political rights." N.M. Const. art VII, § 1. And it certainly appears Mr. Reese was "restored to his political rights" and so became a qualified elector by operation of law when he became eligible to vote after successfully completing his deferred sentence. *See* N.M. Stat. Ann. § 31-13-1(A)(1) (lifting the voting ban from those who complete deferred sentences). According to this chain of reasoning, Mr. Reese can vote because he completed his deferred sentence, the state constitution mandates every voter can also hold

office, so it follows Mr. Reese can hold office. Any statute purporting to direct otherwise, including section 31-13-1(E), must give way.

Not only can both sides claim statutory or constitutional authority favor them, decisional authority provides no clearly controlling guidance. In our only previous encounter with similar facts, we assumed the validity of section 31-13-1(E), but we did so without directly confronting the state constitutional question, and we rendered our decision only in an unpublished and so non-precedential order. *See United States v. Molina*, No. 11-2128, 2012 WL 3065281, at *4 (10th Cir. July 30, 2012). For its part, the New Mexico Supreme Court in *State ex rel. King v. Sloan* acknowledged that a qualified elector and a qualified officeholder are one and the same and that a convicted felon cannot qualify "unless restored to political rights." 253 P.3d 33, 34 (N.M. 2011) (internal quotation marks omitted). The Court then proceeded to observe that the "legislature has recognized this constitutional restriction on the right to hold public office" in two statutory sections, including section 31-13-1(E). *Id.* One might read this passage as suggesting section 31-13-1(E) can peaceably coexist with the state constitution. But one might equally observe that the defendant's criminal sentence at issue in *Sloan* was not deferred, suspended, or completed, so the defendant there could not claim even the right to vote. Without that, one might argue, the question we face — whether section 31-13-1(E) can coexist with section 31-13-1(A)(1) and Article VII, § 2 — simply was not present in *Sloan*.

In the end, then, both sides present plausible and competing claims of authority and collectively pose us with a novel question.  Neither is there any doubt about the question's importance:  it concerns one of the most fundamental civil rights, the right to hold elective office, and to whom that right extends.  The parties' dispute also implicates significant comity and federalism interests.  State authorities have a strong interest in the content of their constitutional charters, an interest that we as a federal court simply do not possess to a comparable degree.  State authorities, too, enjoy comparative advantages over us when it comes to interpreting their own governing documents, given their close familiarity and more regular interaction with those materials.

We have carefully considered, as both our rules and New Mexico's suggest we should, whether there might be some alternative way to decide this case, some way in which we might dispose of this appeal without having to tangle with an unresolved state constitutional question.  We have, however, come up empty.  The question we face is unavoidably dispositive.  If the government's reading of New Mexico law is correct, we must sustain Mr. Reese's federal conviction.  If the government's reading is incorrect, the federal conviction must fall.

Admittedly, Mr. Reese has offered other ways in which, he says, we might resolve this appeal in his favor.  But none is availing.  By way of example,  Mr. Reese's briefs suggest that the government should be estopped from enforcing § 922(g)'s gun ban against him because it supplied him with weapons when he

served in the Navy.  During oral argument, however, counsel correctly

acknowledged that Mr. Reese's plea agreement preserved only the right to appeal

the district court's ruling on his motion to dismiss the § 922(g)(1) charge, and

that Mr. Reese did not make an estoppel argument in his district court motion to

dismiss.  This much is fatal to Mr. Reese's estoppel argument because it is settled

law in our circuit that the "failure to include a particular argument in the motion"

to dismiss waives any appeal based on that argument.  *See United States v. Burke*,

633 F.3d 984, 987-88 (10th Cir. 2011).

Alternatively, Mr. Reese suggests he was never "convicted . . . of a crime

punishable by imprisonment for a term exceeding one year," 18 U.S.C.

§ 922(g)(1), because his 1992 sentence was deferred and eventually dismissed.

But whatever other problems may lurk here, New Mexico law has long held that

deferring and dismissing a defendant's sentence does not eliminate the underlying

conviction.  *Padilla v. State*, 568 P.2d 190, 192 (N.M. 1977); *State v. Brothers*,

59 P.3d 1268, 1271 (N.M. App. 2002); *accord United States v. Valerio*, 441 F.3d

837, 840 (9th Cir. 2006).  To be sure, Mr. Reese argues he no longer remains a

felon under New Mexico law for purposes of state gun possession laws, and he's

right as far as that goes:  the *state* felon-in-possession statute defines the term

"felon" to exclude him.  N.M. Stat. Ann. § 30-7-16(C)(2) ("'[F]elon' means a

person convicted of a felony offense . . . and . . . (c) the person has not received a

deferred sentence.").  The difficulty is that to sustain a *federal* charge for

- 9 -

unlawful possession it does not matter whether state authorities continue to label him a "felon," only (and again) whether he stands "convicted . . . of a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). And in this case the answer to that question is clear: everyone agrees Mr. Reese's 1992 charge carried with it a potential penalty of up to eighteen months in prison. N.M. Stat. Ann. § 31-18-15(A)(4) (1992).

Finally, even if he was convicted of a disbarring felony in 1992, Mr. Reese suggested at oral argument that he was never aware of that fact. But whatever its persuasive force might be, this argument, too, is foreclosed by existing circuit precedent. *See United States v. Games-Perez*, 667 F.3d 1136, 1140-42, *en banc reh'g denied* 695 F.3d 1104 (10th Cir. 2012).

The only possibly viable avenue we can discern for Mr. Reese lies in the potential conflict between sections 31-13-1(E), on the one hand, and Article VII and section 31-13-1(A)(1), on the other. Because this question is dispositive of our appeal, is close, and implicates serious state legal policy questions, we believe we should follow and the highest court in the state should be given the opportunity to lead. Accordingly, we certify to the New Mexico Supreme Court this question:

> If an otherwise-qualified person has completed a deferred sentence for a felony offense, is that person barred from holding public office without a pardon or certificate from the governor, as required by N.M. Stat. Ann. § 31-13-1(E), or is that person's right to hold office automatically restored

by Article VII, §§ 1, 2 of the New Mexico Constitution and N.M. Stat. Ann. § 31-13-1(A)(1)?

Our statement of this question is not intended to limit the New Mexico Supreme Court's scope of inquiry — we acknowledge the Court may reformulate our question and invite it to do so in any way it finds helpful.

In compliance with N.M. App. R. 12-607(C)(1), the court also provides the following information regarding the names and addresses of counsel of record:

On behalf of the United States:

>  Kenneth J. Gonzales, United States Attorney;
>  Jennifer M. Rozzoni, Assistant United States Attorney;
>  & Louis E. Valencia, Assistant United States Attorney
>  Office of the United States Attorney
>  P.O. Box 607
>  Albuquerque, NM 87103

On behalf of Mr. Reese:

>  Jason Bowles, B.J. Crow, & Monnica L. Garcia
>  Bowles and Crow
>  P.O. Box 25186
>  Albuquerque, NM 87125
>
>  William C. Marchiondo
>  Marchiondo Law Offices, P.C.
>  315 Fifth Street, NW
>  Albuquerque, NM 87102-2105

The clerk of this court is directed to transmit a copy of this certification to counsel for all parties to the proceedings in this court. The clerk shall also submit to the clerk of the New Mexico Supreme Court a copy of this order, together with copies of the briefs filed in this court, and either the original or a copy of the

record as filed in this court by the Clerk of the United States District Court for the District of New Mexico.

We greatly appreciate the New Mexico Supreme Court's consideration of this request.

Dated this 11th day of December, 2012.

_____

Neil M. Gorsuch
United States Court of Appeals
for the Tenth Circuit